**SO ORDERED.**

**SIGNED this 10 day of December, 2021.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                             CASE NO. 21-00679-5-DMW

**MARCELLA AGUADO**

                                                                                  **CHAPTER 13**

                     **DEBTOR**

**ORDER DIRECTING PAYMENT OF POST-PETITION RENT, CHARGES AND FEES**

This matter comes on to be heard upon CVM Holdings, LLC's Motion (I) for Relief from the Automatic Stay to Terminate the Lease and Permit Landlord to Regain Possession of Leased Premises; and (II) to Compel the Immediate Payment of Post-Petition Rent and Charges Under Section 365(d)(3) or, in the Alternative, as an Administrative Expense Under Section 503(b) ("Motion") filed by CVM Holdings, LLC ("CVM") on September 8, 2021 and the Response filed by Marcella Aguado ("Debtor") on September 13, 2021. The court conducted a hearing in Raleigh, North Carolina on October 27, 2021. David M. Schilli, Esq. appeared for CVM, and Travis Sasser, Esq. appeared for the Debtor. Based upon the pleadings, the evidence presented, the arguments of counsel and the case record, the court makes the following findings of fact and conclusions of law:

       1.        This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the court has the authority to hear and determine the matter pursuant to 28 U.S.C. § 157(b)(1). The court

has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2. The Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on March 25, 2021 ("Petition Date").

3. Prior to the Petition Date, CVM, as lessor, and Red Monkey Raleigh, LLC ("Red Monkey"), as tenant, entered into a Lease Agreement ("Lease") regarding commercial space ("Premises") located at Crabtree Valley Mall in Raleigh, Wake County, North Carolina. The Debtor subsequently assumed a joint interest with Red Monkey under the Lease. The Lease has a ten-year term expiring on October 31, 2027, and in 2021, minimum monthly rent was in the amount of $16,666.67. The Lease allows the tenant and its invitees to use common areas of the Mall, including parking areas and sidewalks.

4. Section 27 of the Lease identifies numerous situations that would allow CVM to terminate and cancel the Lease. That Section also states as follows:

> If Landlord should elect to reenter as herein provided, or should it take possession pursuant to legal proceedings, it may either terminate this Lease or it may from time to time without terminating this Lease make such reasonable alterations and repairs as may be necessary in order to relet the Demised Premises . . . . No . . . reentry or taking possession of the Demised Premises by Landlord shall be construed as an election to terminate this Lease unless a written notice of such intention be given by Landlord to Tenant at the time of such reentry.

5. The Lease requires the tenant to pay all costs, expenses and reasonable attorneys' fees incurred or paid by CVM in enforcing the covenants, conditions and agreements of the Lease.

6. Red Monkey and the Debtor defaulted under the payment terms of the Lease and did not cure that default within ten days of receiving notice of the default pursuant to the Lease. On March 12, 2021, CVM filed a Complaint in Summary Ejectment ("Complaint") against Red

Monkey and the Debtor in the Wake County District Court, Small Claims Division, seeking possession of the Premises. The Complaint, signed by an attorney for CVM, stated that the Lease ended on January 30, 2021, and rent arrears totaled $216,916.71. A Magistrate found that there was no dispute as to the amount of rent in arrears and granted judgment in favor of CVM, awarding CVM possession of the Premises on March 22, 2021.

7. During the ten-day appeal period of that Judgment, the Debtor filed her petition. The Debtor did not include the Lease on her schedule of executory contracts and unexpired leases, and the Debtor did not list any executory contracts or unexpired leases in Section 6.1 of her Chapter 13 Plan or amended Chapter 13 Plan. The Debtor and Red Monkey continued business operations in the Premises until September 12, 2021, and CVM has received payments totaling $24,500.00 since the Petition Date. CVM has not filed a proof of claim in this case, and the deadline for filing non-governmental proofs of claim has expired.

8. The court conducted an initial hearing on the Motion on September 15, 2021. At that hearing, the Debtor asserted that the automatic stay of 11 U.S.C. § 362 did not prevent CVM from taking possession of the Premises, because the Lease had terminated pre-petition. The court did not make a determination at that time regarding termination of the Lease. The court entered an Order on September 20, 2021 lifting the automatic stay, to the extent that it applied, to allow CVM to secure possession of the Premises under applicable state law. Consistent with Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure, CVM regained possession of the Premises fourteen days after the court entered its Order lifting the stay.

9. CVM asserts that when it filed the Complaint seeking possession of the Premises, it did not terminate the Lease, and the Debtor remained bound by the terms of the Lease while she continued in possession of the Premises post-petition. CVM requests an Order requiring the

Debtor to pay to CVM rent and charges totaling $85,500.02 that CVM alleges have accrued under the Lease since the Petition Date, plus attorney's fees and charges of $8,500.00. CVM asserts it has the right to immediate payment of that amount pursuant to 11 U.S.C. § 365(d)(3). In the alternative, CVM asserts its claim should be paid as an administrative expense under 11 U.S.C. § 503(b). The Debtor argues that CVM is judicially estopped from asserting the Lease has not been terminated, because it stated in the Complaint that the Lease ended on January 30, 2021. The Debtor asserts that no right to post-petition rent exists, because the Lease terminated pre-petition.

10. The court will begin by addressing whether the Lease terminated prior to the Petition Date. Section 27 of the Lease clearly states that if CVM takes possession pursuant to legal proceedings, then it has the option to terminate the Lease, but taking possession shall not be construed as an election to terminate unless CVM provides written notice of termination. The statement by CVM in the Complaint that the Lease ended on January 30, 2021 would not qualify as notice of intent to terminate the Lease. No written notice of termination has been presented to the court, and the court finds that CVM did not terminate the Lease when it filed the Complaint or when it successfully regained possession of the Premises.

11. The court also finds that CVM is not judicially estopped from asserting before this court that it did not terminate the Lease. "[J]udicial estoppel forbids a party from asserting a legal position inconsistent with one taken earlier in the same or related litigation. The doctrine prevents the use of 'intentional self-contradiction . . . as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Price v. Price*, 609 S.E.2d 450, 452 (N.C. Ct. App. 2005) (quoting *Medicare Rentals v. Advanced Servs.*, 460 S.E.2d 361, 363 (N.C. Ct. App. 1995)). One of the factors to determine if judicial estoppel applies, however, is

> whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding

> might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled.

*Bioletti v. Bioletti*, 693 S.E.2d 691, 695 (N.C. Ct. App. 2010) (quoting *Whitacre P'ship v. BioSignia, Inc.*, 591 S.E.2d 870, 889 (N.C. 2004)). In this case, the rent arrears cited in the Complaint, not the asserted end date of the Lease, served as the grounds upon which the Magistrate granted judgment in favor of CVM. The Magistrate found that there was no dispute as to the amount of rent in arrears, and the Judgment made no reference to the end date of the Lease. CVM is not precluded from asserting in this court that it did not terminate the Lease prior to the Petition Date.

12. Even if CVM had terminated the Lease pre-petition, Section 33 of the Lease states that if the tenant fails to surrender possession of the Premises upon termination of the Lease and upon demand by CVM, then CVM has the right to receive 150% of the rental amounts under the Lease as liquidated damages. That same Lease provision states that if the tenant remains in possession by consent of CVM, then the tenant becomes a tenant on a month-to-month basis, subject to the covenants and conditions of the Lease. The Debtor remained bound to pay rent under the Lease regardless of whether the Lease terminated prior to the Petition Date.

13. The Debtor argues that she should not be required to pay post-petition rent to CVM, because the provisions of Chapter 13 of the Bankruptcy Code do not contemplate a debtor having the power to obligate the Chapter 13 estate on a commercial debt post-petition. Section 1305 permits payment of certain post-petition consumer debts through a Chapter 13 plan, allowing the filing of a proof of claim related to "consumer debt . . . for property or services necessary for the debtor's performance under the plan." 11 U.S.C. § 1305(a)(2). The Debtor notes that no similar provision related to post-petition commercial debt exists, arguing that the absence of such a provision implies a Chapter 13 debtor may not obligate the estate on post-petition commercial

5

debts. The Debtor asserts that in the context of a Chapter 13 case, if a debtor were able to obligate the estate on a post-petition commercial debt, then the Chapter 13 trustee would be required to analyze the benefit of the contemplated debt to the estate, a task outside of the scope of the trustee's responsibilities. This argument has a fatal flaw. The amount owed to CVM under the Lease is not a new obligation that the Debtor incurred post-petition. Rather, it is a pre-petition obligation that accrued post-petition. The Debtor should have disclosed the Lease on Schedule G and addressed the Lease in her Chapter 13 Plan, and the language of § 1305 does not support the inference that the Debtor may not be bound by the terms of the Lease for post-petition rent.

14. Section 365(d)(3) applies in this case, and it requires that "[t]he trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3). In *In re CSVA, Inc.*, the United States Bankruptcy Court for the Western District of North Carolina noted that "Congress selected the verb form 'shall.' The trustee's responsibility timely to perform such obligations, therefore, is mandatory, rather than merely permissive." 140 B.R. 116, 119 (Bankr. W.D.N.C. 1992) (quoting 11 U.S.C. § 365(d)(3)).

15. Judge Wooten also noted that "the legislative history of the enactment of section 365(d)(3) illustrates Congress' intent to provide the lessor of nonresidential real property with such treatment" requiring performance under the lease until rejection. 140 B.R. at 119. In 1984, Senator Hatch remarked on the report of the committee of conference on H.R. 5174, the Bankruptcy Amendments and Federal Judgeship Act of 1983 (enacted into law as the Bankruptcy Amendments and Federal Judgeship Act of 1984):

> [D]uring the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the

6

> lease. These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services– the use of its property, utilities, security, and other services– without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

130 Cong. Rec. 20088 (1984) (remarks of Sen. Orrin Hatch).

16. The *CSVA* court also found that "[t]he trustee's duty under section 365(d)(3) is the same irrespective of whether the case is proceeding under Chapter 7 or Chapter 11 of the Bankruptcy Code, because section 365(d)(3) makes no distinction between cases arising under Chapter 7 or Chapter 11." 140 B.R. at 119 (citing 11 U.S.C. § 365(d)(3)). Similarly, § 365(d)(3) makes no distinction to exclude Chapter 13 cases from its purview.

17. The Debtor did not pay timely the amounts owed under the Lease, so the question becomes how the post-petition arrears should be treated in the Debtor's Chapter 13 Plan. CVM has cited cases to support its request that the Debtor be required to pay post-petition arrears immediately; however, the *CSVA* court found that "[i]f the trustee fails timely to perform such obligations, . . . the lessor is entitled to a post-petition administrative rent claim." 140 B.R. at 119. The court finds that treatment to be reasonable.

18. The Debtor argues that even an administrative claim for the arrears is impermissible. The Debtor asserts that CVM is unable to establish that the Debtor and Red Monkey's continued use of the Premises post-petition provided an actual benefit to the estate or preserved the estate's ability to generate income, in order to warrant payment of the rent that accrued at the potential expense of the debtor's other unsecured creditors. Section 503(b)(1) classifies as an administrative expense "the actual, necessary costs and expenses of preserving the estate;" however, § 365(d)(3) requires the trustee to perform under the lease "*notwithstanding*

7

*section 503(b)(1) of this title.*" 11 U.S.C. §§ 503(b)(1), 365(d)(3) (emphasis added).  The language in § 365(d)(3) makes clear that the standards of § 503(b)(1) do not apply to a debtor's obligations on an unexpired lease of nonresidential real property. *See CSVA*, 140 B.R. at 119-120; *In re Florida Lifestyle Apparel*, 221 B.R. 897, 899 (Bankr. M.D. Fla. 1997) ("The literal language of Section 365(d)(3) which requires a trustee to perform all obligations under leases of nonresidential real property, including the obligation to make timely rent payments, is interpreted to waive the requirement that the lessor must demonstrate that the estate benefited from the post-petition rental charge which would otherwise be required pursuant to Section 503(b)(1) of the Bankruptcy Code.").

19.    Last, the court must determine the amount that is entitled to administrative claim treatment.  The payment requirement of § 365(d)(3) applies until a lease is assumed or rejected. Pursuant to 11 U.S.C. § 365(d)(4),

> an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
>
> (i)  the date that is 120 days after the date of the order for relief; or
> (ii) the date of the entry of an order confirming a plan.

11 U.S.C. § 365(d)(4)(A).  The Debtor has not yet obtained confirmation of her Chapter 13 Plan, so the Lease was deemed rejected 120 days after the Petition Date, on July 23, 2021.[1]

---

[1] The court recognizes the potentially impractical expectations placed on a Chapter 13 trustee by §§ 365(d)(3) and (4). In *In re Cho*, the United States Bankruptcy Court for the District of Maine pondered, "why would Congress grant certain authority under §365(a) to the chapter 13 trustee to assume or reject unexpired leases of debtors and then establish certain time frames under §365(d)(4) to assume or reject nonresidential leases of property for which the chapter 13 trustee has no statutory authority or practical reasons to operate? It is also curious that in the chapter 13 context, §365(d)(4) directs trustees to surrender property over which they have no control. Finally, applying the same straightforward construction to §365(d)(3) as I apply here to §365(d)(4), leads to the curious result that the chapter 13 trustees must perform all of the debtors' obligations under unexpired nonresidential leases until the lease is assumed or rejected, presumably including making lease payments." 550 B.R. 152, 155 n.5 (Bankr. D. Me. 2016).

20. In the Motion, CVM seeks payment of $85,500.02, representing post-petition rents and charges due as of September 2021; however, the amount of post-petition rent and charges that should be classified as an administrative expense claim is equal to rent and charges that accrued from the March 25, 2021 Petition Date until July 23, 2021. During that period, four months of rent (April 2021 through July 2021) became due, totaling $66,666.68. The Debtor made payments totaling $24,500.00, leaving the amount of $42,166.68 unpaid for post-petition rent. The Debtor should be required to pay that amount as an administrative claim, plus attorney's fees and charges of $8,500.00 as authorized by the Lease and requested by CVM. *See CIT Commun. Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 236 (4th Cir. 2005). CVM should be permitted to submit an affidavit showing any additional charges incurred under the terms of the Lease before July 23, 2021, as well as any attorney's fees and charges in excess of $8,500.00 for counsel's appearance at the two hearings on the Motion.

21. The Debtor's most recently amended Chapter 13 Plan does not propose any payment to CVM on account of the Lease, so the Debtor should be required to amend her Chapter 13 Plan to propose payment to CVM in compliance with this Order; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. CVM be, and hereby is, awarded an administrative claim in the amount of $50,666.68, comprising $42,166.68 in rent arrears and $8,500.00 in attorney's fees, subject to increase as set forth below;

2. If additional obligations and charges beyond the minimum rent of $16,666.67 per month arose under the Lease during the 120 days after the Petition Date, or if CVM has incurred attorney's fees and charges above $8,500.00 related to this matter, then CVM may file an affidavit within 14 days of this Order to seek administrative treatment of those amounts;

3. If CVM elects to file an affidavit as permitted herein, then the Debtor shall have 14 days to object to the administrative treatment of the amount claimed in the affidavit, or that amount shall be added to the administrative claim awarded in Paragraph 1, above, after review by the court; and

4. Upon a final determination of the administrative claim amount of CVM, the Debtor shall have 30 days to file an amended Chapter 13 Plan to propose payment in full of that claim, or the court will enter an Order to Show Cause why this case should not be dismissed.

END OF DOCUMENT